*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

FRANK SAKORAFOS and ELAINE
TSAPATORIS,

          Plaintiffs-Appellants,

v

CHARTER TOWNSHIP OF LYON, BOARD OF
TRUSTEES OF THE CHARTER TOWNSHIP OF
LYON, JOHN DOLAN, 56560 LLC, DANDY
ACRES SMALL ANIMAL HOSPITAL PLLC, d/b/a
THE DOG LODGE, THERESA MCCARTHY, and
TERRENCE MCCARTHY a/k/a TERRY
MCCARTHY,

          Defendants-Appellees.

FOR PUBLICATION
November 21, 2023
9:35 a.m.

No. 362192
Oakland Circuit Court
LC No. 2021-189644-CH

Before: BOONSTRA, P.J., and GADOLA and MALDONADO, JJ.

GADOLA, J.

Plaintiffs, Frank Sakorafos and Elaine Tsapatoris, appeal as of right the trial court's order granting defendants summary disposition under MCR 2.116(C)(5), (7), and (8). We affirm in part and vacate in part the trial court's order and remand to the trial court for further proceedings.

## I. FACTS

Plaintiffs reside in the Charter Township of Lyon (the Township). Defendant Dandy Acres is a small animal hospital and dog kennel located on ten acres at 56560 Ten Mile Road; the Dandy Acres property is adjacent to plaintiffs' property. A veterinary clinic has operated on the Dandy Acres property since 1975. In 2003, Theresa McCarthy, a veterinarian, purchased the veterinary practice at Dandy Acres and assumed the operation of the veterinary clinic. In 2013, Theresa McCarthy formed 56560 LLC, which then purchased the Dandy Acres property from the previous owners. Sometime thereafter, Terrence McCarthy, on behalf of 56560 LLC, authorized improvements to the property, such as installing dog runs, for the purpose of opening a commercial kennel. In 2013 or 2014, the Dandy Acres defendants began operating a commercial kennel on

the property, dubbing it The Dog Lodge, and announcing the kennel on social media throughout 2014 as a new venture.

In December 2015, in response to complaints about the operation of the kennel, the Township's Zoning Enforcement Officer (ZEO) advised the Dandy Acres defendants that the kennel could not operate without special land use approval, and also that the improvements to the property required a dimensional variance. The ZEO sent an official warning notice to Terrence McCarthy on behalf of 56560 LLC stating that the expansion of the parking area at Dandy Acres without site plan approval and the use of the property for a commercial kennel without special land use approval violated the Township's zoning ordinance.

In January 2016, Terrence and Theresa McCarthy filed a request with the Township to amend § 19.02 of the Township's zoning ordinance to reduce the required setback for a commercial kennel; the proposal was tabled by the Township's Planning Commission and the Dandy Acres defendants apparently abandoned their efforts to amend the ordinance. In 2016 and 2017, the Township's ZEO received additional complaints regarding the kennel and repeatedly advised Dandy Acres that it was not in compliance with the zoning ordinance.

Plaintiffs assert that in June 2017, Dandy Acres sought special land use approval to operate a kennel on the Dandy Acres property. Plaintiffs also assert that the planning commission voted unanimously to deny the request, noting that the kennel was being operated illegally and that residents had complained about the noise, and that the Dandy Acres defendants did not appeal the denial of their request for the special use permit. On appeal, the Township denies that Dandy Acres applied for and was denied a special use permit to operate a kennel.[1]

---

[1] In their brief on appeal, the Township defendants state, "Plaintiffs' assertion that the Township denied a kennel when the vet clinic applied for a special land use to have doggie daycare added is incorrect and is another example [of] Plaintiffs' brief's statement of facts being too loose and fast with clear facts established by public records. Dandy Acres did not apply to operate a kennel and have that denied, as Plaintiffs claim." The record belies this explanation. In their answer to plaintiffs' complaint, the Township defendants admitted that on June 5, 2017, Dandy Acres applied for site plan approval and special land use approval, and admitted that the application sought approval for "an addition to the existing structure, as well as an outdoor dog pool and outdoor play area," and also "a new 2,000 square foot barn north of the existing and proposed buildings." The Township defendants further stated in their answer to the complaint that at the conclusion of the July 24, 2017 planning commission meeting on the Dandy Acres' applications, the planning commission "recommended denial of the applications" and that "Dandy Acres did not proceed to a final decision before the Township Board." The accusation on appeal by the Township defendants that plaintiffs mischaracterized the record appears to be primarily the Township's disagreement that what is occurring at The Dog Lodge is, as suggested by the name, dog lodging. Similarly, the Township defendants assert that the Dandy Acres' applications were not denied; a more candid explanation is that the unanimous decision of the planning commission to deny the Dandy Acres' applications did not result in a formal denial because the recommendation apparently was not submitted to the Township board for decision. It is unfortunate that the

In 2017, defendant John Dolan was elected to the position of Township supervisor. In 2018, the Township's attorney advised plaintiffs by letter that the Township considered Dandy Acres' boarding of animals to be a non-conforming use. In 2020, the Township attorney advised plaintiffs by letter that the kennel was not a legal use, but that the passage of time had made enforcement of the ordinance impossible under the doctrine of laches.

Plaintiffs initiated this action in August 2021, alleging that operation of a commercial kennel on the property violates the 1975 variance granted to the veterinary clinic and also violates the Township's past and current ordinances. Plaintiffs alleged that in 1975, the Dandy Acres property was zoned AG, which permitted kennels and veterinary clinics as a conditional use on lots with a minimum width of 500 feet and required any building, pen, or runway to be a minimum of 150 feet from any adjacent property line. The Dandy Acres property's 330-foot width therefore could not accommodate a veterinary clinic or kennel under the Township's 1968 ordinance. Plaintiffs alleged that in granting the dimensional variance in 1975 for the property to be used as a veterinary clinic, the Township's ZBA conditioned the variance on the property *not* being used as a kennel or sold for kennel purposes. Plaintiffs further alleged that at the time of the filing of the complaint, the property was zoned R-1.0. Plaintiffs alleged that under the current zoning ordinance, commercial kennels are permitted only by special use permit and only if the buildings in which animals are kept, animal runs, or exercise areas are located at least 200 feet from any property line, and are not allowed in any setback area.

Plaintiffs' complaint alleged six counts. Against the Dandy Acres defendants, plaintiffs alleged Count I – Abatement of Nuisance per se, Count II – Nuisance per se, and Count III – Civil Conspiracy; plaintiffs' Count III also alleged Civil Conspiracy against the Township Supervisor. Against the Township defendants, plaintiffs alleged Count IV – Deprivation of Civil Rights and Count V – Mandamus. Count VI was not alleged against specific defendants but requested that the trial court appoint a prosecutor to prosecute an action to abate the nuisance pursuant to MCR 3.601(F).

The Dandy Acres defendants moved for summary disposition under MCR 2.116(C)(5) and (8), contending that plaintiffs lacked standing to maintain the action for abatement of a nuisance per se and had otherwise failed to state a claim. The Township defendants moved for summary disposition under MCR 2.116(C)(5), (7), and (8), asserting lack of standing, governmental immunity, statute of limitations, and failure to state a claim.

On January 18, 2022, plaintiffs responded to defendants' motions, asserting that they had standing to bring the nuisance action under MCL 125.3407 and also under Chapter 48, §11.04 of the Township's Ordinance that specifically permitted "any person aggrieved or adversely affected by" violation of the ordinance to institute suit. On February 7, 2022, the Township amended

---

Township defendants did not attempt to clarify on appeal the largely semantical nature of this particular dispute. It also is a mystery why the dog kennel was permitted to continue its operation after the planning commission voted unanimously to recommend denial of Dandy Acres' applications.

§11.04, removing the provision that permitted "any person aggrieved or adversely affected by" violation of the ordinance to institute suit.

The circuit court granted defendants' motions for summary disposition. With respect to Count I – Abatement of a Nuisance per se, plaintiffs alleged that the Township defendants failed to enforce the zoning ordinance as required by MCL 125.3407, justifying plaintiffs in bringing the action as private citizens. The trial court held that as private citizens, plaintiffs had standing to bring an action to abate a public nuisance only if they could show special damages, being unique harm not common to property owners similarly situated. The trial court found that plaintiffs had not demonstrated special damages and therefore did not have standing to bring the action. The trial court did not address whether plaintiffs had standing under Chapter 48, §11.04 of the Township's Ordinance. The trial court also dismissed Count II of the complaint, which sought damages for nuisance per se, holding that damages were not an available remedy for nuisance.

With respect to Count III – Civil Conspiracy, the trial court held that because the underlying claim of nuisance failed, the claim of civil conspiracy relating to that claim also must fail. The trial court further held that the claim of civil conspiracy with regard to Dolan, the Township supervisor, was barred by governmental immunity.

With respect to Count IV – Deprivation of Civil Rights, the trial court held that the Township's obligation to enforce its ordinances was discretionary and its failure to do so did not deprive plaintiffs of their property or their civil rights. With respect to Count V, the trial court similarly held that plaintiffs were not entitled to mandamus because plaintiffs had no clear legal right to enforcement of the Township's ordinances. With respect to Count VI, plaintiffs' request for appointment of a prosecutor to prosecute the abatement of the nuisance, the trial court held that plaintiffs failed to establish that they had standing to bring the lawsuit, that they had a recognizable cause of action, or that a special prosecutor should be appointed under MCL 600.3805. Plaintiffs now appeal.

II. DISCUSSION

A. STANDARD OF REVIEW

We review a trial court's decision to grant or deny a writ of mandamus for an abuse of discretion. *Southfield Ed Ass'n v Bd of Ed of Southfield Pub Sch*, 320 Mich App 353, 378; 909 NW2d 1 (2017). An abuse of discretion occurs when the trial court's decision falls outside the range of principled outcomes, *Adler v Dormio*, 309 Mich App 702, 707; 872 NW2d 721 (2015), or when the trial court's decision is premised upon an error of law, *Ronnisch Const Group, Inc v Lofts on the Nine, LLC*, 499 Mich 544, 552; 886 NW2d 113 (2016). Whether a defendant has a clear legal duty to act, which is required to warrant mandamus, is a question of law that this Court reviews de novo. *Rental Props Owners Ass'n of Kent Co v Kent Co Treasurer*, 308 Mich App 498, 518; 866 NW2d 817 (2014).

We review de novo a trial court's decision to grant or deny summary disposition. *Meemic Ins Co v Fortson*, 506 Mich 287, 296; 954 NW2d 115 (2020). A motion for summary disposition under MCR 2.116(C)(5) is properly granted when the party asserting the claim lacks the legal capacity to sue. Standing and legal capacity to sue are distinct concepts, however. See *Flint Cold*

*Storage v Dep't of Treasury*, 285 Mich App 483, 502; 776 NW2d 387 (2009). Standing generally is the right of the plaintiff initially to invoke the power of the trial court to adjudicate a claimed injury, *Federated Ins Co v Oakland Co Rd Comm*, 475 Mich 286, 290; 715 NW2d 846 (2006), while capacity to sue concerns whether there is a legal barrier, such as mental incompetency, that deprives a party of the legal ability to bring an action, *Moorhouse v Ambassador Ins Co, Inc*, 147 Mich App 412, 419 n 1; 383 NW2d 219 (1985). A challenge to standing is more appropriately considered under MCR 2.116(C)(8) or (10). See *Le Gassick v Univ of Mich Regents*, 330 Mich App 487, 494 n 2; 948 NW2d 452 (2019).

Summary disposition under MCR 2.116(C)(7) is warranted upon demonstration of specifically enumerated grounds, including governmental immunity, that compel dismissal of the action. When deciding a motion under MCR 2.116(C)(7) the trial court is to consider the documentary evidence submitted and to accept the contents of the complaint as true unless contradicted by documentation submitted by the moving party. *Estate of Miller v Angels' Place, Inc*, 334 Mich App 325, 330; 964 NW2d 839 (2020). If no facts are disputed and if reasonable minds could not disagree regarding the legal effect of those facts, summary disposition is a question of law for the court. *Id*. A motion for summary disposition under MCR 2.116(C)(8) tests the legal sufficiency of the complaint and is properly granted when, accepting all well-pleaded factual allegations of the complaint as true, the claims alleged are unenforceable as a matter of law and no factual development could justify recovery. *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019).

## B. STANDING

In Counts I-III of their complaint, plaintiffs alleged a nuisance claim against the Dandy Acres defendants and a civil conspiracy claim against Dolan and the Dandy Acres defendants. The trial court held that plaintiffs lacked standing to bring the nuisance action, that plaintiffs could not properly seek damages for their nuisance claim, and that their civil conspiracy claim failed both for failure to prove the underlying tort and because governmental immunity barred it with respect to Dolan. Plaintiffs contend that the trial court erred by granting defendants summary disposition on the basis that plaintiffs lack standing. Plaintiffs argue that they have standing to assert nuisance per se under MCL 125.3407, and also under Chapter 48, § 11.04 of the Lyon Township Ordinance.

### 1. MCL 125.3407

Under § 407 of the Michigan Zoning Enabling Act (MZEA), MCL 125.3407, the use of land or a building in violation of a zoning ordinance is a nuisance per se. *Twp of Fraser v Haney*, 509 Mich 18, 26; 983 NW2d 309 (2022); see also *Soupal v Shady View, Inc*, 469 Mich 458, 465; 672 NW2d 171 (2003). MCL 125.3407 requires the legislative body to designate an official to enforce the ordinance and requires that official to enforce the zoning ordinance. The statute provides:

> Except as otherwise provided by law, a use of land or a dwelling, building, or structure, including a tent or recreational vehicle, used, erected, altered, razed, or converted in violation of a zoning ordinance or regulation adopted under this act is a nuisance per se. The court shall order the nuisance abated, and the owner or agent in charge of the dwelling, building, structure, tent, recreational vehicle, or land is

liable for maintaining a nuisance per se. The legislative body shall in the zoning ordinance enacted under this act designate the proper official or officials who shall administer and enforce the zoning ordinance and do 1 of the following for each violation of the zoning ordinance:

(a) Impose a penalty for the violation.

(b) Designate the violation as a municipal civil infraction and impose a civil fine for the violation.

(c) Designate the violation as a blight violation and impose a civil fine or other sanction authorized by law. This subdivision applies only to a city that establishes an administrative hearings bureau pursuant to section 4q of the home rule city act, 1909 PA 279, MCL 117.4q. [MCL 125.3407.]

In certain circumstances, a private party may pursue a nuisance claim against a property owner for violation of a zoning ordinance. In *Ansell v Delta Co Planning Comm*, 332 Mich App 451, 461; 957 NW2d 47 (2020), this Court explained:

A violation of a zoning ordinance constitutes a public nuisance that, by itself, "gives no right of action to an individual and must be abated by the appropriate public officer." *Towne v Harr*, 185 Mich App 230, 232; 460 NW2d 596 (1990). However, a private individual who can "show damages of a special character distinct and different from the injury suffered by the public generally" may bring an action to abate a public nuisance arising from the violation of a zoning ordinance. *Id*.

See also *Lamkin v Hamburg Twp Bd of Trustees*, 318 Mich App 546, 555; 899 NW2d 408 (2017) (KRAUSE, P.J., concurring in part and dissenting in part) (observing that a private citizen may bring an action to abate a nuisance caused by violation of a zoning ordinance when impacted "in some way distinct from the general public"). To successfully bring an action for nuisance, the plaintiff must demonstrate standing, which may be proven by showing that the "defendant's activities directly affected the plaintiff['s] recreational, aesthetic, or economic interests." *Kallman v Sunseekers Prop Owners Ass'n, LLC*, 480 Mich 1099 (2008) (quotation marks and citation omitted).

Defendants contend that plaintiffs lack standing to bring the action for nuisance because plaintiffs failed to demonstrate that they have "special damages." Defendants argue that plaintiffs have conceded that many Township residents object to the nuisance created by the dog kennel, and that because plaintiffs' damages are not unique, plaintiffs' damages are not special damages. In making this argument, defendants conflate the test for determining standing with the test for determining "aggrieved party" status as discussed in *Olsen v Chickaming Twp*, 325 Mich App 170; 924 NW2d 889 (2018), overruled in part by *Saugatuck Dunes Costal Alliance v Saugatuck Twp*, 509 Mich 561 (2022).

Under MCL 125.3605, a party seeking appellate relief from a decision of a zoning board of appeals must demonstrate that he or she is an aggrieved party. In *Olsen*, this Court held that based upon a long and consistent interpretation of that phrase in Michigan jurisprudence, to be an

aggrieved party a party must prove that he or she had suffered "a unique harm, dissimilar from the effect that other similarly situated property owners may experience," and that "mere ownership of an adjoining parcel of land is insufficient to show that a party is aggrieved." *Olsen*, 325 Mich App at 185. *Olsen* was thereafter overruled in part by *Saugatuck Dunes*, 509 Mich 561. In *Saugatuck Dunes*, our Supreme Court announced that to demonstrate aggrieved party status, the party (1) must have participated in the challenged proceedings by taking a position on the contested decision, such as through a letter or public comments; (2) must claim some legally protected interest or protected personal, pecuniary, or property right likely to be affected by the challenged decision; and (3) must provide some evidence of special damages arising from the challenged decision in the form of an actual or likely injury or burden on their asserted interest or right different in kind or more significant in degree than the effects on others in the local community. *Saugatuck Dunes*, 509 Mich at 569, 595.

By contrast, the term "standing" refers to "the right of a plaintiff initially to invoke the power of a trial court to adjudicate a claimed injury." *Id*. at 583. The aggrieved party standard required by MCL 125.3605 is limited to the context of who may appeal the administrative actions of zoning officials as discussed in that statutory section. The requirement of showing aggrieved party status *does not* apply to a plaintiff bringing a claim of nuisance per se under MCL 125.3407. Private citizens may bring an action "to abate a public nuisance, arising from the violation of zoning ordinances or otherwise, when the individuals can show damages of special character distinct and different from the injury suffered by the public generally." *Towne v Harr*, 185 Mich App 230, 232; 460 NW2d 596 (1990); see also *Ansell*, 332 Mich App at 461. Standing is thus measured by a different standard than that used to measure aggrieved party status. Under the test for standing, an adjoining landowner is likely to be determined to be affected by the nuisance created by a zoning violation in a manner distinct from the general public. For example, in *Travis v Preston (On Rehearing)*, 249 Mich App 338, 346; 643 NW2d 235 (2002), the plaintiffs successfully asserted injury of a "special character distinct and different from the injury suffered by the public generally" because the odors from the defendant hog farm affected only the residences near the hog farm and not the community at large. The plaintiffs therefore asserted standing sufficient to initiate a lawsuit to abate the nuisance, and standing in that case was not defeated by the fact that certain other residents also experienced the odors from the hog farm. *Id*. at 346. Thus, a plaintiff's injury need not be unique in the community to confer standing to abate a nuisance per se.

Although defendants agree on appeal that the question here is one of standing and not one of aggrieved party status, defendants nonetheless focus on the requirements discussed in *Olsen* relevant to aggrieved party status. Defendants argue that because plaintiffs concede that other residents also are adversely affected by the dog kennel, plaintiffs have failed to establish standing because their alleged injury is not unique, but instead is shared by other residents.

Similarly, the trial court in this case conflated the test for standing with that of aggrieved party status. The trial court granted defendants' motions for summary disposition with respect to Counts I – III of plaintiffs' complaint, holding that plaintiffs had not demonstrated special damages and therefore did not have standing to bring the action. In reaching this conclusion, however, the trial court applied the aggrieved party test applicable to a party seeking to appeal a zoning decision under MCL 125.3605. The trial court concluded that because plaintiffs had not demonstrated unique damages as described in the aggrieved party test, they lacked standing to initiate suit for

nuisance. In doing so, the trial court clearly erred. The correct standard is whether plaintiffs "can show damages of a special character distinct and different from the injury suffered by the public generally." *Ansell*, 332 Mich App at 461; *Towne*, 185 Mich App at 232. Plaintiffs' damages need not be singular to confer standing to bring a nuisance claim; the fact that other nearby residents also may have suffered ill effects from the dog kennel does not defeat plaintiffs' standing to bring a suit alleging nuisance. Moreover, plaintiffs' status as an adjacent property owner lends support to the finding that plaintiffs have demonstrated special damages different from injury suffered by others in the community generally.

2. §11.04

Plaintiffs also contend that they have standing to assert nuisance under Chapter 48, § 11.04 of the Lyon Township Ordinance. At the time plaintiffs filed their complaint, § 11.04 provided:

> The township board or its duly authorized representative is hereby empowered to commence and pursue any and all necessary and appropriate actions or proceedings in the circuit court, or any other court having jurisdiction, to restrain or prevent any noncompliance with or violation of any of the provisions of this Ordinance, and to correct, remedy, or abate such noncompliance or violation. **Any person aggrieved or adversely affected by such noncompliance or violation may institute suit or join the township board in such a suit to abate the violation.** [Emphasis added.]

Plaintiffs filed their complaint initiating this matter on August 20, 2021. On January 18, 2022, in response to defendants' motions for summary disposition, plaintiffs asserted that they had standing to bring a nuisance action under MCL 125.3407 and also under Chapter 48, §11.04 of the Township's Ordinance that specifically permitted "any person aggrieved or adversely affected by" violation of the Ordinance to institute suit. On February 7, 2022, the Township amended § 11.04 of Chapter 48 of its Ordinance, removing the provision that permitted a person aggrieved or adversely affected by noncompliance with or a violation of the ordinance to institute suit to abate the violation. As amended, § 11.04 provides:

> The township is hereby empowered to commence and pursue any and all necessary and appropriate actions or proceedings in the circuit court, or any other court having jurisdiction, to restrain or prevent any noncompliance with or violation of any of the provisions of this Ordinance, and to correct, remedy, or abate such noncompliance or violation.

On appeal, the Township defendants argue that in this case the amended version of § 11.04 applies because that version was in effect at the time of the trial court's decision. See *Grand/Sakawa of Northfield, LLC v Northfield Twp*, 304 Mich App 137, 141; 851 NW2d 574 (2014) (The applicable law is that in effect at the time of the trial court's decision; if a zoning ordinance is amended after suit is filed, a court will give effect to the amendment.) This is a general rule, but two exceptions to the rule exist. A court will not apply an amendment to a zoning ordinance if (1) to do so would deprive a property owner of a vested property interest acquired before the enactment of the amendment, or (2) the "amendment was enacted in bad faith and with unjustified delay." *Id*. "[T]he test to determine bad faith is whether the amendment was enacted for the purpose of manufacturing a defense to plaintiff's suit." *Landon Holdings, Inc v Grattan*

*Twp*, 257 Mich App 154, 161; 667 NW2d 93 (2003). "The factual determination that must control is whether the *predominant* motivation for the ordinance change was improvement of the municipality's litigation position." *Grand/Sakawa*, 304 Mich App at 143-144.

The timing of the Township's amendment of §11.04 in this case suggests bad faith, as the amendment appears to have the purpose of removing plaintiffs' right to bring suit to enforce the Township's ordinance against the Dandy Acres defendants. The trial court in this case, however, addressed neither the applicability of § 11.04 nor its hasty mid-litigation amendment, necessitating remand to the trial court for determination of which version of § 11.04 applies and whether plaintiffs have standing to bring their action under that ordinance section.

## C. MANDAMUS

In Count IV of their complaint, plaintiffs alleged deprivation of civil rights as a result of the Township's failure to enforce its ordinance. In Count V of their complaint, plaintiffs sought a writ of mandamus to compel the Township defendants to enforce their ordinance. The trial court dismissed Counts IV and V, reasoning that the Township was within its discretion to decline to enforce its ordinance, and that plaintiffs therefore were not deprived of civil rights and not entitled to mandamus. On appeal, plaintiffs contend that the trial court erred by granting the Township defendants' motion for summary disposition, contending that MCL 125.3407 requires a municipality to enforce its ordinances, and that plaintiffs are entitled to seek the equitable relief of mandamus in light of the Township's failure to enforce its ordinance.[2]

Mandamus is properly issued only to compel officials to perform duties to which there is a clear legal right and no discretion. *Southfield Ed Ass'n*, 320 Mich App at 378. This Court in *Southfield Ed Ass'n* explained:

> A writ of mandamus is an extraordinary remedy that will only be issued if (1) the party seeking the writ "has a clear legal right to the performance of the duty sought to be compelled," (2) the defendant has a clear legal duty to perform the act requested, (3) the act is ministerial, that is, it does not involve discretion or judgment, and (4) no other legal or equitable remedy exists that might achieve the same result. [*Id*.]

As discussed, under § 407 of the MZEA, MCL 125.3407, the use of land or a building in violation of a zoning ordinance is a nuisance per se. *Haney*, 509 Mich at 26; see also *Soupal*, 469 Mich at 465. Under MCL 125.3407 "[t]he court shall order the nuisance abated." MCL 125.3407 further requires the legislative body to designate an official to enforce the ordinance and requires that official to enforce the zoning ordinance, providing in part that "[t]he legislative body shall in

---

[2] The trial court also dismissed Count VI of plaintiffs' complaint, which sought appointment of a prosecutor to prosecute the abatement of the nuisance under MCL 600.3805. On appeal, plaintiffs do not specifically challenge the trial court's dismissal of Count VI.

the zoning ordinance enacted under this act designate the proper official or officials who shall administer and enforce the zoning ordinance . . . ."

In *Towne*, this Court reasoned that MCL 125.294, the precursor statute to MCL 125.3407, provided that "the township board enacting the ordinances *shall* administer and enforce the same and that the court *shall* order such nuisance abated." *Towne*, 185 Mich App at 231-232. Similarly, this Court in *Hass v City of Menominee*, 193 Mich App 163, 164; 483 NW2d 666 (1992), referencing a different statutory section, former MCL 125.585(3), held that the plaintiff was entitled to bring an action before the city's zoning board of appeals seeking enforcement of the city's zoning ordinance against a property owner who allegedly was using his land in a manner beyond that authorized under an existing nonconforming use variance. *Id*. at 164-165. This Court in *Hass* rejected the defendant's argument that "zoning enforcement is discretionary and a zoning administrator's decision regarding such enforcement is not reviewable."

Municipalities, however, are granted discretion in the enforcement of their ordinances. The MZEA, MCL 125.3101 *et seq*., provides townships statutory authority to enact and enforce zoning ordinances "for the orderly planning of their communities." *Lyon Charter Twp v Petty*, 317 Mich App 482, 487; 896 NW2d 477 (2016). One of the purposes of the authority to zone articulated by the MZEA is "to ensure that use of the land is situated in appropriate locations and relationships." MCL 125.3201(1). To achieve the goals of the statutory zoning authority, "[i]t is the policy of this state and a goal of zoning that uses of property not conforming to municipal zoning ordinances be gradually eliminated." *Lyon Charter Twp*, 317 Mich App at 488, quoting *Jerome Twp v Melchi*, 184 Mich App 228, 231; 457 NW2d 52 (1990). However, "[w]hether and when to enforce its zoning ordinance to effectuate this gradual elimination is a matter within a township's discretion." *Lyon Charter Twp*, 317 Mich App at 488. "Decisions of a planning commission, or other similar local agency, concerning whether to enforce zoning ordinances are decisions which are so basic to the operation of a municipality that any attempt to create liability with respect thereto would constitute an unacceptable interference with [the municipality's] ability to govern." *Lyon Charter Twp*, 317 Mich App at 482 (quotation marks and citation omitted). "Absent extraordinary circumstances, courts will not interfere with such decisions." *Id*. at 488-489 (quotation marks and citation omitted).

As a result, although MCL 125.3407 provides for the enforcement of a zoning ordinance, a municipality has discretion in doing so and courts generally will not interfere with the municipality's decisions. See, e.g., *id*. at 488.[3] Again, "a writ of mandamus is an extraordinary remedy that will only be issued if (1) the party seeking the writ has a clear legal right to the performance of the duty sought to be compelled, (2) the defendant has a clear legal duty to perform the act requested, (3) the act is ministerial, that is, it does not involve discretion or judgment, and (4) no other legal or equitable remedy exists that might achieve the same result." *Southfield Ed Ass'n*, 320 Mich App at 378. In sum, the Township has discretion in the enforcement of its

---

[3] We reiterate that the statute requires of the legislative body enacting a zoning ordinance that it designate in the ordinance "the proper official or officials who shall administer and enforce the zoning ordinance …." It is these officials who are then required to enforce the ordinance in certain designated ways in the exercise of the municipality's discretion. MCL 125.3407.

ordinances, and plaintiffs' ability to seek abatement of the nuisance per se created by the alleged zoning violation provides an equitable remedy to achieve enforcement of the ordinance. The trial court therefore did not err by determining that plaintiffs are not entitled to a writ of mandamus.

The Township defendants also argue that they are not failing to enforce their ordinance. They argue that Dandy Acres is not violating the Township's zoning ordinance, or that at least there is no violation that the Township can successfully enforce against Dandy Acres because the doctrine of laches precludes the Township from enforcing its ordinance at this late date. The trial court, however, did not reach the substantive issue whether the Township failed to enforce its ordinance. Instead, the trial court dismissed Counts IV and V of plaintiffs' complaint against the Township defendants on the basis that mandamus was not an available remedy under the facts of this case. We conclude that the trial court did not abuse its discretion by dismissing Counts IV and V and denying plaintiffs' claim for a writ of mandamus. *Southfield Ed Ass'n*, 320 Mich App at 378.

To summarize, the trial court erred by granting the Dandy Acres defendants summary disposition of plaintiffs' nuisance suit. The trial court incorrectly applied the "aggrieved party" test to determine that plaintiffs lacked standing. The trial court also failed to consider plaintiffs' assertion that they were entitled to initiate a nuisance action under §11.04 of the Township ordinance. The trial court did not err, however, by dismissing Counts IV and V of plaintiffs' complaint, and did not abuse its discretion by determining that plaintiffs are not entitled to a writ of mandamus.

The portion of the trial court's order granting the Dandy Acres defendants summary disposition of plaintiffs' nuisance claim is vacated, and this matter is remanded to the trial court for reconsideration of the motion, applying the correct test for standing, and to consider whether plaintiffs have standing under §11.04 of the Township ordinance. The trial court's opinion is affirmed in all other respects. We do not retain jurisdiction.

/s/ Michael F. Gadola
/s/ Mark T. Boonstra
/s/ Allie Greenleaf Maldonado